NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

---

**MARIA E. GARZA,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2012-7073

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 11-0277, Judge Donald L. Ivers.

---

Decided: May 14, 2012

---

MARIA E. GARZA, of Hebbronville, Texas, pro se.

ANUJ VOHRA, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE DAVIDSON, Director, TODD M. HUGHES, Deputy Director. Of counsel on the brief was DAVID J. BARRANS, Deputy Assistant Attorney

General, United States Department of Veterans Affairs, of
Washington, DC.

---

Before RADER, *Chief Judge*, LINN and O'MALLEY, *Circuit Judges*.

PER CURIAM.

Maria E. Garza ("Garza"), the surviving spouse of deceased veteran Armando E. Garza ("Veteran"), appeals the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") in *Garza v. Shinseki*, No. 11-0277, slip op. (Vet. App. Jan. 12, 2012) ("*Opinion*"), affirming a decision of the Board of Veterans' Appeals ("Board"), denying her claim of entitlement to dependency and indemnity compensation benefits. Because the Veteran did not and could not satisfy the requirements of 38 U.S.C. § 1318, this court affirms.

## I. BACKGROUND

The Veteran served on active duty from June 1968 to June 1972, including in Vietnam from 1969 to 1970. Beginning on September 20, 2002, the Veteran applied to the Department of Veterans Affairs ("Agency") for benefits based on various service-connected disabilities. In September 2003, the Agency's Regional Office ("RO") granted the Veteran service connection with an aggregate disability rating of 40%. In September 2004, the RO granted the Veteran's request for additional benefits and increased his aggregate disability rating to 60%, effective September 20, 2002. In December 2004, the RO denied the Veteran's request for service connection based on ischemic heart disease. The Veteran did not appeal that decision, which then became final. In 2006, the RO granted the Veteran service connection for other disabilities and increased his total disability rating to 90%, effective May 31, 2006.

The Veteran filed a notice of disagreement with the 90% rating, and in August 2007, the RO granted the Veteran a total disability rating due to individual unemployability ("TDIU"), effective May 31, 2006. The Veteran filed another notice of disagreement, this time arguing for an earlier effective date. In January 2008, while that notice of disagreement was pending, the Veteran died from liver cancer.

In January 2008, Garza applied to the RO for dependency and indemnity compensation benefits under 38 U.S.C. § 1318. In August 2008, the RO denied her claim. Garza appealed to the Board, and the Board affirmed on the ground that "the Veteran did not meet the durational requirement for a total disability rating . . . under 38 U.S.C. § 1318." Garza then appealed to the Veterans Court, which, in a single-judge opinion, affirmed the Board on the same ground. *Opinion* at 4. The Veterans Court also noted that Garza alleged "in her reply brief that the Board erred in not addressing the recent addition of ischemic heart disease to the list of diseases for which presumptive service connection may be established as secondary to exposure to herbicides." *Id.* at 5. On that issue, the Veterans Court held that it did not possess jurisdiction to readjudicate the RO's December 2004 decision denying service connection for ischemic heart disease when that issue had not been first considered below by the Board. *Id.* The Veterans Court granted Garza's motion for a panel decision, found no error in the Veterans Court's single-judge opinion, and held that the single judge opinion "remains the decision of the [Veterans] Court." *Garza v. Shinseki*, No. 2012-7073, slip op. at 2 (Vet. App. Jan. 12, 2012). Garza timely appealed, and this court has jurisdiction pursuant to 38 U.S.C. § 7292(a)-(e).

## II. ANALYSIS

This court's review of appeals from the Veterans Court is limited to "relevant questions of law, including constitutional and statutory provisions." 38 U.S.C. § 7292(d). This court will "set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon in the decision of the [Veterans Court]" only if this court finds it to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (B) contrary to [the] [C]onstitution[] . . . ; (C) in excess of statutory jurisdiction, authority, or limitations . . . ; or (D) without observance of procedure required by law." *Id.*

At issue here are two questions: (1) whether the Veterans Court properly interpreted its jurisdictional authority in declining to reconsider the Veteran's earlier claim for service connection for ischemic heart disease; and (2) if the Agency were to readjudicate that issue and award the Veteran retroactive service connection for ischemic heart disease, whether Garza could satisfy the statutory durational requirements for benefits under 38 U.S.C. § 1318.

Section 1318 provides that "[t]he Secretary shall pay benefits under this chapter to the surviving spouse . . . of a deceased veteran described in subsection (b) of this section in the same manner as if the veteran's death were service connected." § 1318(a). Subsection (b) defines a deceased veteran, in relevant part, as:

> a veteran who dies . . . and who was in receipt of or entitled to receive . . . compensation at the time of death for a service-connected disability rated totally disabling if—

(1) the disability was continually rated totally disabling for a period of 10 or more years immediately preceding death; [or]

(2) the disability was continuously rated totally disabling for a period of not less than five years from the date of such veteran's discharge . . . .

Garza argues that the Board erred in determining that her deceased spouse did not meet the requirements of subsections (b)(1) or (b)(2) to entitle her to benefits under subsection (a). Garza appears to contend that the Veterans Court failed to consider arguments regarding the Veteran's entitlement to service connection for ischemic heart disease based on a new Agency regulation, 38 C.F.R. § 3.309(e) (effective August 31, 2010), which establishes a presumptive service connection for ischemic heart disease based on herbicide exposure in Vietnam during the relevant time frame. *See* Diseases Associated with Exposure to Certain Herbicide Agents, 75 Fed. Reg. 53,202-01 (Dep't of Veterans Affairs Aug. 31, 2010) ("*Diseases Associated with Herbicides*").

According to Garza, under *Nehmer v. United States Veterans' Administration*, 32 F. Supp. 2d 1175 (N.D. Cal. 1999), *aff'd*, 284 F.3d 1158 (9th Cir. 2002), a disease that is presumptively service-connected based on herbicide exposure in Vietnam receives an effective date for service connection retroactive to the date the Agency received the veteran's claim, *see* 38 C.F.R. § 3.816(c) (regulation implementing *Nehmer*), instead of the date that the Agency regulation creating the presumption went into effect, *see* 38 U.S.C. § 5110(g) ("[W]here compensation . . . is awarded . . . pursuant to any Act or administrative issue, the effective date of such award or increase . . . shall not be earlier than the effective date of the Act or administrative issue."). Garza appears to contend that if the Agency had readjudicated the Veteran's previously denied claim

for service connection based on ischemic heart disease, the Veteran could then meet the durational total disability requirements for dependency and indemnity contribution benefits under § 1318(b).

The Agency counters that, while Garza may be entitled to service connection for ischemic heart disease based on its August 31, 2010, regulation, Agency Br. at 13 n.5 ("After issuing the [August 31,] 2010 regulations, [the Agency] began readjudicating, as required by *Nehmer* court orders, more than 89,000 previously denied claims by Vietnam veterans or their survivors for service connection for heart disease, Parkinson's disease, or b-cell leukemias."), the issue of service connection for ischemic heart disease was never readjudicated by the Agency or considered the Board.  Thus, the Agency asserts that the issue was not properly before the Veterans Court in the first instance.  Moreover, the Agency contends that even if it were to readjudicate the Veteran's claim, and retroactively award the Veteran a disability rating based on ischemic heart disease pursuant to *Nehmer*, the earliest effective date that the Veteran could possibly be entitled to TDIU is September 20, 2002, the date of his first claim.  The Agency notes that that date is less than six years prior to his death and contends that it does not satisfy § 1318(b)'s total disability durational requirements.

The Agency is correct.  Neither the RO nor the Board addressed the Veteran's previously denied claim for service connection for ischemic heart disease when deciding Garza's claim for benefits under § 1318(b).  *Opinion* at 5.  Because the Board did not address that claim, the Veterans Court correctly held that it lacked jurisdiction to decide it in the first instance.  *See Ledford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998) ("[T]he [Veterans C]ourt has the 'power to affirm, modify, or reverse *a decision of the Board* . . . .'  Thus, the [Veterans C]ourt's jurisdiction

is premised on and defined by the Board's decision concerning the matter being appealed." (citing 38 U.S.C. §§ 7252(a) and (b))).

Moreover, even if the Agency were to readjudicate the Veteran's previously denied claim and retroactively award the Veteran an earlier total disability rating based on ischemic heart disease, the Veteran still could not satisfy § 1318(b)'s total disability durational requirements. Under 38 U.S.C. § 5110(g), "where compensation . . . is awarded . . . pursuant to any Act or administrative issue [here 38 C.F.R. § 3.309(e), establishing presumptive service connection for ischemic heart disease], the effective date of such award . . . shall not be earlier than the effective date of the Act or administrative issue [here, August 31, 2010]." *Nehmer* created a "limited exception to [§ 5110(g)] for a claim where a Nehmer class member filed a claim before the new rule [establishing the presumption] took effect." *Diseases Associated with Herbicides* at 53,203; *see also Nehmer*, 284 F.3d at 1161-62. Although ischemic heart disease is not specifically defined as a "covered herbicide disease" in 38 C.F.R. § 3.816(b)(2) (implementing *Nehmer*), the Federal Regulations implementing 38 C.F.R. § 3.309(e) imply that the effective date provisions of 38 C.F.R. §§ 3.816(c) and (d) (also implementing *Nehmer*) would pertain to any new condition later included in a "final regulation adding the new condition to the list of diseases presumptively associated with herbicide exposure in Vietnam." *Diseases Associated with Herbicides* at 53,203. Thus, even assuming the *Nehmer* exception to § 5110(g) would apply in this case, the earliest effective date of service connection for diseases presumptively associated with herbicide exposure "will be *the later of the date such claim was received by the* [Agency] *or the date the disability arose.*" 38 C.F.R. § 3.816(c)(2) (emphasis added). In this case, because the Veteran did not file *any* claim for service connection prior to Septem-

ber 20, 2002, even assuming the Agency were to grant retroactive service connection for ischemic heart disease, he could not meet § 1318's durational requirement.

Because the earliest effective date to which the Veteran could possibly be entitled to TDIU is September 20, 2002; because that date is less than ten years prior to his death in January 2008; and because the Veteran's disability was not "continuously rated totally disabling for a period of not less than five years from the date of [his] discharge" in 1972, the Veteran does not and cannot satisfy the conditions of 38 U.S.C. § 1318(b). This court has considered Garza's remaining arguments and finds that they lack merit.

For these reasons, this court affirms the decision of the Veterans Court.

**AFFIRMED**

COSTS

Each party shall bear its own costs.